Thomas DEBAETS, Edward Faulhaber, Geraldine Slack, Dale Swafford, Howard Wallace and Michael Witkop, Appellants–Defendants,

v.

NATIONAL EDUCATION ASSO-
CIATION—SOUTH BEND,
Appellee–Plaintiff.

No. 71A03–9502–CV–48.

Court of Appeals of Indiana.

Nov. 21, 1995.

William F. Diehl, Gagnon & Diehl, Indianapolis, Milton L. Chappell, Springfield, Virginia, for Appellant.

Richard J. Darko, Mary Jane Lapointe, Lowe Gray Steele & Hoffman, Indianapolis, for Appellee.

## OPINION

STATON, Judge.

Thomas R. DeBaets, Edward D. Faulhaber, Geraldine Slack, Dale E. Swafford, Howard A. Wallace, and Michael R. Witkop (collectively "Teachers") appeal from the trial court's grant of summary judgment in favor of National Education Association—South Bend ("the Association"). Teachers raise three issues for appellate review which we consolidate into one and restate as: whether the trial court erred in granting summary judgment.

We affirm.

The undisputed facts reveal that the Association is a school employee organization and the exclusive representative of certified school employees of the Board of School Trustees of South Bend Community School Corporation ("School Board"). The Association is affiliated with the Indiana State Teachers Association ("ISTA") and the National Education Association ("NEA"). The Association and the School Board entered into a collective bargaining agreement ("the Agreement") for the 1992–1993 school year. The Agreement required each member of the bargaining unit represented by the Association who was not a member of the Association, to pay a "fair share" fee to the Association and its affiliates, ISTA and NEA, for expenses it incurred for being the exclusive bargaining unit representative.[1]

Teachers are certified school employees who have neither joined the Association nor paid a fair share fee for the 1992–1993 school year. In the fall of 1992, Teachers were given materials which set forth all Association expenditures and showed which portions of those expenditures were included in the fair share fee. In December 1992, Teachers and the Association engaged in an arbitration proceeding conducted by the American Arbitration Association in order to determine the fair share fees for the 1992–1993 school year. The arbitrator determined that the fair share fee for the 1992–1993 school year was $385.86.[2] Teachers did not pay the fee after arbitration and the Association filed a complaint for damages seeking each teacher's fair share fee plus costs. The Association filed a motion for summary judgment which the trial court granted. This appeal ensued.

Teachers contend that the trial court erred when it granted the Association's motion for summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992),

---

1. The Certified Educational Employee Bargaining Act, codified at IND. CODE § 20-7.5-1-1 *et seq.* (1993), governs the principles and procedures of collective bargaining between school employers and school employees. We point out that IC 20-7.5-1-6 has recently been amended and now provides that no school employee may be required to join or financially support, through the payment of fair share fees, representation fees, professional fees, or other fees, a school employee organization and any rule, regulation, or contract provision requiring such is deemed void. *See* 1995 Ind. Acts P.L. 199–Sec. 1. However, this amendment applies only to contracts entered into after June 30, 1995 and is not applicable here.

2. The fair share fee of $385.86 was attributed to chargeable expenditures of ISTA, NEA, and the Association, and was apportioned as follows: $287.12 to the ISTA; $63.51 to the NEA; and $35.23 to the Association.

Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

In this case, the trial court entered specific findings of fact and conclusions of law. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.* (1993), Ind.App., 615 N.E.2d 441, 444, *reh. denied.* Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny* (1994), Ind.App., 627 N.E.2d 1362, 1363, *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

Teachers contend that summary judgment was precluded because material issues of fact existed regarding the Association's determination of the fair share fee.

Initially, we note that the United States Supreme Court has determined that the requirement of nonunion employees, as a condition of employment, to pay a fair share of the union's costs of negotiating and administering a collective bargaining agreement does not violation the Constitution. *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261. However, the Court has limited both the manner by which the union can collect financial support from nonunion members and the union activities for which nonmembers can be forced to provide support. *See Chicago Teachers Union, Local No. 1 v. Hudson* (1986), 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 and *Lehnert v. Ferris Faculty Ass'n* (1991), 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572.

In demonstrating the propriety of the fair share fee, the union bears the burden of proving the proportion of chargeable expenses to total expenses. *Lehnert, supra,* at 524, 111 S.Ct. at 1961. However, a union cannot meet its burden of proving a nonunion member's fair share fee by a formula that subtracts nonchargeable expenses from the union's total expenses. Instead, chargeable expenses must be affirmatively proven. *Albro v. Indianapolis Education Ass'n* (1992), Ind.App., 585 N.E.2d 666, 670, *reh. denied, adopted on transfer,* 594 N.E.2d 781, *reh. denied.*

Teachers contend that the Association failed to affirmatively prove its chargeable expenses in the materials it designated in support of its motion for summary judgment. Teachers state that the affidavits submitted in support of the Association's motion contain only conclusory statements regarding the chargeable expenses and that the Association failed to present any evidence which identified how the Association calculated its chargeable and nonchargeable expenses for each affiliate's portion of the fair share fee.[3] Our review of the record reveals otherwise.

With respect to chargeable expenses apportioned to ISTA, the Association filed the affidavit of Doyle McAllister, the Associate Executive Director of ISTA. In his affidavit, McAllister indicated that in order to determine a fair share fee for nonmembers, he had each member of his staff complete time sheets documenting the time spent on chargeable and nonchargeable expenses. From these time sheets and after an extensive investigation of its chargeable and nonchargeable expenses, McAllister stated that the ISTA issued a report for its fair share fee calculation for the 1992–1993 school year. McAllister listed each department within the ISTA budget, described each department's function, and indicated whether departmental activities were chargeable or nonchargeable.[4]

---

3. As indicated *supra,* the affiliates are: at the national level, NEA, at the state level, ISTA, and at the local level, the Association.

4. These departments include: UniServ (a delivery system used by ISTA and NEA to provide services to local teachers), Field Services Support, Professional Programs, Public Relations and Communications, Legislative Relations, Governance, Committees and Task Forces, Research, Administration, Business and Support Services, Corporate, and Depreciation/Leasing.

The record also contains a chart which listed each department, its budget, its audit from ISTA's financial reports, and where it is discussed in McAllister's affidavit. The ISTA report encompasses each department's expenses and specifically designates total expenses, chargeable expenses, and nonchargeable expenses. From this information, one can easily discern how certain expenses were deemed chargeable. Accordingly, we determine that the Association sustained its burden of proof in affirmatively showing the chargeable expenses for the ISTA portion of the fair share fee.

■ With respect to the chargeable expenses apportioned to the NEA, the Association filed the affidavit of Michael G. McPherson, NEA's manager of internal auditing. McPherson stated that each year the NEA publishes the NEA Program Accomplishment Report which sets forth all expenditures, chargeable or nonchargeable, by the NEA. The report lists the objectives and programs within each administrative area of the Association including the budgeted and expended amounts for each program. McPherson described each area's function and indicated that he assisted each department manager in calculating their expenditures, and in determining which portion of those expenditures were chargeable to the fair share fee. McPherson indicated that after the chargeable determinations were completed, they were reviewed by auditors from the certified public accounting firm of Coopers & Lybrand. The audit report of Coopers & Lybrand addressed each administrative area, its activities, and which activities were chargeable and which were noncargeable. These materials designated by the Association were sufficient in affirmatively proving the chargeable expenses for the NEA portion of the fair share fee.

■ With respect to its own portion of the fair share fee, the Association submitted the affidavit of Anna Pappas, the President of the Association. In her affidavit, Pappas indicated that its portion of the fair share fee related to collective bargaining, contract administration, grievance adjustment, and other duties of an exclusive bargaining representative in Indiana. Pappas then explained each category of the Association's expenditures and delineated which portions were chargeable to the fair share fee. For each explanation, she referred to the Association's 1991–1992 financial statement which included an audit of revenues and operating expenses and set forth those expenditures includable in the fair share fee.[5] Pappas' affidavit and the corresponding financial sheet affirmatively show the chargeable expenses attributed to the Association's portion of the fair share fee.

In sum, we determine that the materials designated by the Association in its motion for summary judgment were sufficient to sustain its burden of affirmatively proving those expenses chargeable to the fair share fee. Accordingly, we reject Teachers' contention that the trial court erred in granting summary judgment in the Association's favor for failure to sustain its burden of proof.

■ Teachers also contend that the Association failed to apportion specific administrative or overhead costs. We note that the United States Supreme Court has set forth three guidelines for determining, on a case-by-case basis, which activities a union may constitutionally charge to nonmembers. The chargeable expenses must: (1) be germane to collective bargaining; (2) be justified by the government's vital policy interest in labor peace and avoiding free riders; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop. *Lehnert, supra,* at 519, 111 S.Ct. at 1959.

■ Teachers argue that the Association erroneously included certain administrative expenses of the NEA as fully chargeable. These expenses were mortgages and incidental building renovation costs as well as other overhead expenses such as: internal building

5. For example, Pappas states:

The twenty-first category of operating expenses on Exhibit "B" is "Legislative." The expenditures in this category are made to defray the costs of Association members' lobbying efforts in Indianapolis on educational issues. This category is not chargeable to the fair share fee payors.

Record, p. 124.

operations, health services, purchasing, printing, mail distribution, and casualty and liability insurance.[6] Teachers conclude that because the Association failed to apportion these expenses as chargeable and nonchargeable, a material issue of fact existed precluding summary judgment. We disagree.

The United States Supreme Court has determined that:

... a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit. This conclusion, however, does not serve to grant a local union *carte blanche* to expend dissenters' dollars for bargaining activities wholly unrelated to the employees in their unit.... There must be some indication that the payment is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership in the parent organization.

*Lehnert, supra,* at 524, 111 S.Ct. at 1961.

In ascertaining whether certain expenses of the national affiliate can be imposed upon the local union, the Court has indicated:

The essence of the affiliation relationship is the notion that the parent will bring to bear its often considerable economic, political, and informational resources when the local is in need of them. Consequently, that part of a local's affiliation fee which contributes to the pool of resources potentially available to the local [union] is as-

sessed for the bargaining unit's protection, even if it is not actually expended on that unit in any particular membership year. *Id.* at 523, 111 S.Ct. at 1961.

The very nature of the free rider problem and the governmental interest in overcoming it require that the union have a certain flexibility in its use of compelled funds. *Ellis v. Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, etc.* (1984), 466 U.S. 435, 456, 104 S.Ct. 1883, 1896, 80 L.Ed.2d 428. The furtherance of the common cause leaves some leeway for the leadership of the group. *Id.* at 457, 104 S.Ct. at 1897 (quotations omitted). The cost of proving the precise amount of a chargeable expense could be greater than the expense itself, and for that reason a union should be afforded some leeway. *Albro, supra,* at 672.

Our review of the record reveals that the mortgage and building renovation expenses accounted for .052% of NEA's chargeable expenses and that the internal building operations, health services, purchasing, printing, mail distribution, casualty and liability insurance account for .044% of NEA's chargeable expenses.[7] These expenses are minimal in comparison to overall chargeable expenses, and we will not scrutinize the Association's calculations. Therefore, we reject Teachers' invitation to reweigh the evidence regarding the apportionment of these overhead expenses.

Teachers also challenge the Association's failure to apportion NEA expenses attributed to Uniserv grants.[8] Yet, Teachers present

---

6. In addition, Teachers contend that the Association included the following ISTA expenses as fully chargeable: equipment maintenance and rental, telephone, occupancy, moving, interviewing, notary bond, dues and subscriptions, supplies, paper, postage, staff meetings and training, computer services and training, outside printing, worker's compensation, taxes, office expenses, temporary help, auditing, interest expense, loan repayments, corporate legal, employee early retirement, grants, depreciation, auto leasing, and contingency fund costs. Appellant's Br. at 21–22. However, our review of the record reveals that in the ISTA's fair share fee report, all of these items were deemed nonchargeable. Thus, we reject Teachers' contention that the Associa-

tion failed to properly apportion these administrative expenses.

7. Teachers extract these expenses from NEA's financial statement as of August 31, 1992. This statement indicates that total chargeable expenses were $115,396,818 with mortgage and building renovation expenses being $5,996,421 or .052% of total chargeable expenses, and other overhead expenses being $5,092,730 or .044% of total chargeable expenses.

8. Uniserv is designed to provide and coordinate the delivery of most NEA programs and services to affiliates, members, and feepayers. Chargeable activities conducted by Uniserv include collective bargaining, contract administration,

no substantial evidence to rebut the Association's calculation nor do Teachers indicate the manner in which or how much of the Uniserv grants should be deemed chargeable. Moreover, our review of the record reveals that the Uniserv grants were allocated between chargeable and nonchargeable expenses using an adjustment of the average chargeable percentage of Uniserv grants by agency fee state affiliates for the preceding year ending August 31, 1991. The record also indicates that this percentage was modified in light of the *Lehnert* decision and determined that 96.7% of the expenses were chargeable. Such evidence sufficiently indicates the manner in which and how much of the Uniserv grants were to be apportioned. We therefore reject Teachers' contention that the Association failed to apportion the Uniserv grants.

In sum, we conclude that the Association has sustained its burden of proof by affirmatively proving its chargeable expenses to the fair share fee. We further conclude that the expenses the Association deemed chargeable fulfilled the guidelines set forth in *Lehnert* and that the Association did not err in failing to apportion certain administrative and overhead expenses. Accordingly, we determine that the Association sustained its burden of proof and that the trial court properly entered summary judgment in its favor.

Affirmed.

GARRARD and RILEY, JJ., concur.

grievance adjustment, discussion, and other activities related to Indiana's collective bargaining law, teacher retirement, teacher certification, professional matters, representation of teachers at due process hearings, and teacher education.