OPINION OF THE COURT
Herman Cahn, J.
This libel action is brought by plaintiff Jean Jee (Jee) against defendants the New York Post Co., Inc. (Post), Rob Polner (Polner) and Paul Snisky (Snisky), in connection with three articles about Jee published in the Post on July 5, 1990. Polner and *254 the Post move, pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint. Snisky also moves, for similar relief as to him. For the reasons stated below, the motions are granted.
On July 5, 1990, the Post published three articles about Jee which were written by Polner, who was a Post reporter and writer specializing in education. At the time the articles were published, Jee was the principal of the Livingston School which is a public high school operated by the Board of Education of the City of New York. Jee states that the Livingston School is actually a conglomerate of several different schools, including a junior high school, a high school and a school for emotionally disturbed students. The students at the Livingston School range in age from 14 to 21 years.
The main article was published under the headline “Handcuff Principal is Probed”. It reported that the Board of Education was investigating Jee in connection with charges of corporal punishment and other misconduct at the school and that Jee had been removed from control of the Livingston School by the Superintendent of Schools for Special Education. The alleged misconduct on Jee’s part included the handcuffing of students, harassment of teachers and the diversion of school resources, such as books and computers, for the possible operation of a private money-making enterprise known as Livingston Enterprises.
A second article published on the same day ran under the headline “Student: school head drove me to brink of suicide”. This article reported a former student’s account of a claimed incident between the student and Jee. The third article, which was published under the headline “Wide Support for ‘Vital’ Educator”, reported on support received by Jee from colleagues and friends in the face of the charges and investigation.
Polner states that the articles were the result of an extensive investigation he conducted in late June and early July of 1990. Polner asserts that he interviewed more than 15 people over the course of many hours and obtained documents confirming many of the charges against Jee including copies of letters sent to the Board of Education by students and staff members concerning the problems at the Livingston School. The main source of information regarding the charges of misconduct against Jee was a lengthy telephone interview with Waldemar Rojas, the then Superintendent of Schools for Special Education. Polner also interviewed Deputy Inspector General Conrad Reitz of the Office of the Inspector General, as well as students *255 Claudelle Reid, Charles Cheeseboro, Dorian Davis, Larry Slade and Chris Purifory, among others. He also saw some documents relating to this matter. Polner asserts that on several occasions he attempted to speak to Jee herself regarding the charges, but she was unwilling to speak to him.
The complaint alleges 13 defamatory statements arising from the three articles:
(1) “Jean Jee left her job last Friday as head of the Livingston School at West End Avenue and 82nd Street, agreeing to take a one-year leave of absence at half-pay while the Board of Education conducts its probe.”
(2) “Mrs. Jee accused me [student Claudelle Reid] of stealing money from my mother or something and I started trying to get the hell out of there. I was kicking and screaming. I ran for the door and held on, but she got me in the chair and cuffed me * * * here.”
(3) “Student Charles Cheeseboro, 14, charged he was hospitalized after being beat up by school administrator Dennis Roman and handcuffed by Jee.”
(4) “Jee told members of Rojas staff that boxes of records— which might pertain to the alleged business [of Livingston Enterprises] — were stolen from her car, according to Rojas.”
(5) “Although Jee told him that she filed a police report on the incident, she has yet to produce it — and Rojas said he has given her until Saturday to do so.”
(6) “She [Jee] spent as many as five hours a day away from school — even as school disturbances escalated, student attendance plunged from 120 to an ‘outrageous’ 30 and educational and counseling services fell apart, Rojas said.”
(7) “Jee locked thousands of dollars in books and supplies in storage closets while teachers complained they had nothing to work with.”
(8) “Rojas said Jee devastated school morale by regularly writing up teachers on charges of sexual harassment and corporal punishment.”
(9) “Of the school’s 50 teachers, 15 were fired, quit or forced to transfer.”
(10) “On June 7, Rojas temporarily put one of his assistants, Mel Matulski, in charge of Jee’s school.”
(11) “All teachers were advised that they would be sent to other schools in September and Livingston would get a new principal, teaching staff and younger pupils.”
*256 (12) “A custodian and an alarm system secured the building against her [Jee’s] entry at night and new locks were out on the doors at the beginning of this week, according to Rojas.”
(13) “Chris was so heated up [after Jee wouldn’t see him over a plastic gun], he climbed out an open classroom window to a third story ledge. He stood for a few seconds in a whirl of anger until a quick-thinking teacher grabbed him by the ankle and another helped haul him back in.”
The complaint further alleges that it was defendant Snisky, a teacher at the Livingston School, who instigated Polner’s investigation of the conditions at the Livingston School and Jee’s management of the school. The complaint alleges that Snisky did so in retaliation against Jee for charges which were brought against Snisky which led to his removal from assigned duties effective June 21, 1990.
Each defendant now moves for summary judgment dismissing the complaint. The motions are made after all parties have completed discovery, including depositions. The action is scheduled for imminent trial.
In order to obtain summary judgment, the movant “must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). The party opposing the motion must then demonstrate the existence of a factual issue requiring a trial of the action. (Zuckerman v City of New York, 49 NY2d 557, 560.)
Snisky argues that he is entitled to summary judgment because none of the statements complained of are attributable to him and he did not contribute to the writing or publication of the articles in question. Jee asserts that Snisky is liable because he knew the words that Polner intended to use and the context in which they would be used.
“One who makes a defamatory statement is not responsible for its recommunication without his authority or request by another over whom he has no control” (Hoffman v Landers, 146 AD2d 744, 747). Here, even assuming, arguendo, that the statements at issue are defamatory, Jee has submitted no evidence which demonstrates that they are attributable to Snisky, that they were recommunicated with his authority or that he had any control over Polner or the Post. Jee merely states that each of the defendants, although acting independently, had a joint purpose to defame her. This is insufficient to demonstrate *257 a triable issue of fact which would warrant a trial of this cause of action as to Snisky and summary judgment is warranted as to him.
Snisky’s motion for summary judgment is granted.
Polner and the Post seek summary judgment on the grounds that Jee is a “public official” and she has not demonstrated that the statements at issue were made with actual malice. Jee argues that she is not a “public official” and the actual malice test is therefore inapplicable. She also argues that even if she is a “public official”, the statements were made with actual malice.
In New York Times Co. v Sullivan (376 US 254, 279), the United States Supreme Court held that a “public official” may not recover damages for a defamatory falsehood relating to his or her official conduct unless he or she proves that the statement was made with “actual malice”, i.e., with knowledge that it was false or with reckless disregard of whether it was false or not. Reckless disregard has been defined as a high degree of awareness of probable falsity. (Gertz v Robert Welch, Inc., 418 US 323, 332; Suozzi v Parente, 202 AD2d 94, 101.)
The Supreme Court’s decision in the New York Times case (supra) does not set forth exactly how far the “public official” designation extends. It is certain that the term does not apply to all public employees. (Hutchinson v Proxmire, 443 US 111, 119, n 8.) However, “[i]t is clear * * * that the ‘public official’ designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.” (Rosenblatt v Baer, 383 US 75, 85.)
It is for the court to determine whether a plaintiff is a public official for the purposes of applying the actual malice test. (Rosenblatt v Baer, supra.)
Whether a public school principal is a “public official” for purposes of the defamation law has not been squarely decided in New York. In Jiminez v United Fedn. of Teachers (NYLJ, Apr. 9, 1996, at 26, col 2 [Sup Ct, NY County 1996]), Justice Charles Ramos concluded that a candidate for the position of public school principal was a public official for purposes of the defamation law. Justice Ramos’ decision was based on the fact that the process of appointing a principal requires a high degree of public debate in terms of both the school board’s nominating process and the interaction of parents in the selec *258 tion process. In Jimenez v United Fedn. of Teachers (239 AD2d 265, appeal dismissed 90 NY2d 890 [1997]), the Appellate Division, First Department, affirmed Justice Ramos’ decision, concluding that the plaintiff therein, having subjected herself to the appointment process for public school principal, and having temporarily acted as such during that process, was a public official for the purpose of that process.
In their decisions, both the Appellate Division and Justice Ramos cited the decision of the United States District Court for the District of Minnesota, Fourth Division, in Johnson v Robhinsdale Ind. School Dist. (827 F Supp 1439). In Johnson, the court concluded that, under Minnesota law, public school principals criticized for their official conduct are public officials for the purposes of defamation law. The court noted that education of children is of vital importance to society and is one of the most important functions of State and local governments. (Supra, at 1443.) The court further noted that although principals must adhere to rules set by the Board of Education and the school board, principals have broad authority over the format of educational programs employed in public schools. (Supra.) As such, they “have significant governmental power over public education and the students they supervise.” (Supra.) The court concluded that to find that a public school principal was not a public official for purposes of the defamation law would stifle public debate about important local issues. (Supra.)
The court in Johnson (supra) noted the plaintiff’s argument that she did not in fact have the authority that her title suggested. However, the court found that it was undisputed that as principal she managed teachers and other school employees and at least appeared to the public to be the person in charge of operating the school. Thus, the fact that she appeared to have responsibility over the conduct of education at the school was sufficient to trigger public official standards, even if she did not actually have the power that the public perceived her to have. (Supra.)
Other courts have similarly held that a public school principal is a public official. For instance, in Palmer v Bennington School Dist. (159 Vt 31, 615 A2d 498, 501), the Supreme Court of Vermont concluded that such a finding was mandated by the crucial role of education in society. The court stated that as long as the principal had, or appeared to have, substantial responsibility for or control over the governmental function of education, the principal should be considered a public official *259 for the purposes of the defamation law. (Supra, 159 Vt 31, 615 A2d, at 502.) Similarly, in Kapiloff v Dunn (27 Md App 514, 524, 343 A2d 251, 258, cert denied 426 US 907 [1976]), the Court of Special Appeals of Maryland concluded that “[i]t is plain that as a high school principal * * * [plaintiff] was within the ‘public figure-public official’ classification and that his suitability for the position was a matter of public or general interest or concern.” (See also, Reaves v Foster, 200 So 2d 453, 458 [Miss 1967]; Junior-Spence v Keenan, 1990 WL 17241 [Tenn Ct App, Feb. 28, 1990, Cantrell, J.]; McNulty v Kessler, 1995 WL 809931 [Mass Super Ct, Apr. 3, 1995, McHugh, J.]; but cf, McCutcheon v Moran, 99 Ill App 3d 421, 425 NE2d 1130 [App Ct]; Ellerbee v Mills, 262 Ga 516, 422 SE2d 539, 540 [Sup Ct].)
Jee must be considered a “public official” for the purposes of the defamation law. As noted above, the First Department has already concluded that a person who subjects himself or herself to the appointment process for public school principal, and who temporarily acts as principal during that process, is a public official for the purpose of the appointment process (see, Jimenez v United Fedn. of Teachers, supra). The First Department did not go so far as to state that public school principals are public officials under all circumstances.* However, it would appear logical that one who is a public official during the process of appointment, remains such after appointment, while serving as principal. In any event, if this court were to consider the issue anew, it would come to the conclusion that a public school principal is a public figure.
The importance of education to society and the legitimate concern that the public has in seeing that the educational process is properly administered cannot be disputed. Public school principals play an important role in shaping and administering the educational process. They supervise teachers and other staff as well as bear the ultimate responsibility for the welfare of the students at their school during the school day. In light of these factors and the First Department’s holding in Jimenez (supra), the court is persuaded that a public school principal is a public official for the purposes of the defamation law.
The court notes Jee’s argument that she should not be considered a public official because she was subject to many *260 restrictions pursuant to the rules and regulations of the Board of Education and the school board and therefore had little, if any, independent control over the governmental function of education and the setting of policy. However, as principal, Jee was in charge of the Livingston School on a daily basis and exercised much discretion. She has not demonstrated that she had any less authority than a principal usually has or would be perceived by the public as having. Indeed, in her deposition, Jee stated that, as principal, her duties included "all supervisory and administrative tasks”, “observing all teachers and doing staff development”, “observing and knowing every single student”, and communicating and relating with parents. As part of her functions, she appeared before the Community Board tenants associations, neighborhood block associations and other community groups. She was an important figure in the community of which the Livingston School was a part. It cannot be said that she had no control over the function of education and the setting of policy.
As a public official, Jee must demonstrate: (1) that defendants made a defamatory statement; (2) that the statement was published; (3) that the statement was false; (4) that the statement was made with actual malice, i.e., knowing falsity or reckless disregard for the truth; and (5) that the plaintiff was injured thereby. (See, New York Times Co. v Sullivan, 376 US, supra, at 285-286; Suozzi v Parente, 202 AD2d, supra, at 101.) Actual malice must be established by clear and convincing evidence. (Suozzi v Parente, supra, at 101; New York Times Co. v Sullivan, supra, at 285-286.) Actual malice is not established merely because reliance on a source’s information is negligent. (Suozzi v Parente, supra, at 101.) Furthermore, the mere failure to conduct a further investigation is insufficient to establish actual malice. (Supra.) “Nor can actual malice be founded on the misinterpretation of a source or the resolution of an ambiguity adversely to the plaintiff or in accordance with a particular political view.” (Supra, at 102.) Movants have shown that their reports were not published with actual malice. Jee has not set forth any evidence which would demonstrate a triable issue of fact as to whether any of the statements complained of were published with actual malice.
In sum, Jee has not rebutted the defendants’ showing that the statements were not made with actual malice, and that therefore their motion for summary judgment should be granted.
It should be noted that the motion brought by the Post and Polner has been decided based on the court’s finding that *261 plaintiff is a “public official”, and that the Post and Polner have shown that there was no actual malice in the publication. The court has therefore not reached the issue of whether the statements are defamatory.
Accordingly, it is ordered that defendant Snisky’s motion for summary judgment is granted and the complaint is dismissed as against Snisky; and it is further ordered that the motion of defendants Polner and the New York Post for summary judgment are granted and the complaint is dismissed as against Polner and the New York Post.
[Portions of opinion omitted for purposes of publication.]

 The decision in Jimenez v United Fedn. of Teachers (239 AD2d, supra, at 266) appears to contain language limiting the finding that plaintiff was a public official to the appointment process: “plaintiff, having subjected herself to the appointment process for public school principal * * * was a public figure for the purpose of that process” (emphasis added).