Lance C. ARCHER, Appellant–Defendant,

v.

Daniel L. GROTZINGER and Rose Grotzinger, by Next Friend Daniel L. Grotzinger, Appellees–Plaintiffs.

No. 29A05–9605–CV–174.

Court of Appeals of Indiana.

June 13, 1997.

Darla S. Brown, William H. Kelley, Kelley, Belcher & Brown, P.C. Bloomington, for Appellant–Defendant.

Jeffrey Meunier, Coots, Henke & Wheeler, Carmel, for Appellees–Plaintiffs.

## OPINION

RUCKER, Judge.

Appellant–Defendant Lance C. Archer appeals the trial court's judgment rejecting a jury verdict and declaring a mistrial. We address the following restated issue: did the jury's verdict represent a compromise verdict thereby requiring the trial court to reject it? We think not and therefore reverse.

The minor child Rose Grotzinger suffered personal injuries when the bicycle she was riding was struck by a car driven by Archer. Acting as plaintiff and next friend Rose's father, Daniel L. Grotzinger, sued Archer for damages. The case proceeded to trial by jury where the issue of comparative fault was raised. At the conclusion of trial, the following relevant instruction was read to the jury:

> You must decide this case on the basis of the Indiana Law of comparative Fault.

> The term "fault" refers to the varieties of conduct that make a person responsible, in some degree, for any injury. The type of fault at issue in this case is negligence. I will instruct you further concerning negligence.

> . . . .

> If you find that the Plaintiff's percentage of fault is greater than fifty percent (50%) of the total, then you shall return a verdict for the Defendant, and no further deliberation of the jury is required.

> If you find that the Plaintiff's percentage of fault is fifty percent or less of the total, then you shall determine the total amount of damages the Plaintiff would [be] entitle[d] to recover without regard to fault. You should then multiply the total amount of damages by the percentage of fault of the Defendant and enter a verdict for the Plaintiff in the amount of the product of that multiplication. I have prepared a verdict form that will assist you in arriving at your verdict.

R. at 181. After deliberation, the jury found Rose 50% at fault and also found Archer 50% at fault. However, without determining the total amount of damage and then multiplying that amount by 50%, the jury simply found in favor of Archer and against Rose and her father (referred to collectively as "the Grotzingers"). After consulting with counsel for both parties and hearing arguments on the issue, the trial court advised the jury that its verdict was unacceptable. Over objection of the Grotzingers who moved for mistrial, the trial court took the motion under advisement, played an audio tape of all instructions that had been read to the jury previously, gave the jury a clean copy of the verdict form, and sent the jury back to the jury room to see if it could "arrive at a verdict with further deliberations." R. at 222. The jury deliberated further, and upon return found that Rose was 51% at fault and that Archer was 49% at fault. Again the jury found in favor of Archer and against the Grotzingers. On

this occasion the trial court refused to accept the verdict, discharged the jury and granted the Grotzingers' motion for mistrial. According to the trial court the jury's verdict represented a compromise verdict which is not permitted under the law. The trial court then set a new trial date. Archer filed a motion to reinstate the verdict and enter judgment on his behalf. The trial court denied the motion and this appeal ensued in due course.

Archer complains the trial court erred in declaring a mistrial because the jury's verdict was proper on its face and there was sufficient evidence to support it. Granting a mistrial lies within the sound discretion of the trial court, and its decision is afforded great deference on appeal. *Hull v. Taylor*, 644 N.E.2d 622 (Ind.Ct.App.1994). Also, when it is apparent to the trial court that a jury cannot agree upon a verdict after ample time is spent in deliberation, there exists good cause for a jury's discharge. *Hinton v. State*, 272 Ind. 297, 397 N.E.2d 282 (1979), *reh'g denied; see also Blevins v. State*, 591 N.E.2d 562 (Ind.Ct.App.1992) (trial judge may, within exercise of sound discretion, discharge a jury for failure to reach a verdict). In this case, however, after being instructed to deliberate further, the jury agreed upon and reached its verdict. The trial court discharged the jury on the basis that it had reached a compromise verdict. We disagree.

Although there are a number of cases in this jurisdiction that mention the term "compromise verdict" and express disapproval of it, none actually define the term. *See e.g. Adams v. McClevy*, 582 N.E.2d 915 (Ind.Ct.App.1991); *Burris v. Riester*, 506 N.E.2d 484 (Ind.Ct.App.1987), *trans. denied; McNall v. Farmers Ins. Group*, 181 Ind.App. 501, 392 N.E.2d 520 (1979), *trans. denied.*

Thus, we turn to other jurisdictions for a working definition. In *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1, 7 (Pa.1994) the Pennsylvania Supreme Court defined a "compromise verdict" as one where "the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt." *See also Albert v. Paper Calmenson & Co.*, 515 N.W.2d 59, 65 (Minn.Ct. App.1994) ("A 'compromise verdict' occurs when the jury awards an amount that reflects a compromise between liability and proven damages."); *Carlson v. Lampert*, 190 Wis.2d 650, 529 N.W.2d 905 (Wis.1995) (A "compromise verdict" occurs when the jury, unable to agree on liability, compromises that disagreement and enters a grossly low award of damages.) Consistent with the foregoing definitions is the notion that the jury, although determining that the defendant is liable, nonetheless awards either zero damages or damages which are inconsistent with the facts introduced at trial. As we have previously determined: "[w]here the trier of fact has found in favor of plaintiff on the issue of liability, and the evidence relating to injury is uncontroverted and establishes a substantial injury proximately caused by the defendant's negligence, an assessment of damages inconsistent with the uncontroverted evidence is improper and will be reversed." *Adams*, 582 N.E.2d at 919 *quoting McNall*, 392 N.E.2d at 525.

Because the jury's initial award of zero damages was inconsistent with its allocation of fault, the trial court properly rejected the verdict. In like fashion the trial court properly instructed the jury to deliberate further.[1] Upon further deliberation the jury reconsidered its allocation of fault and deter-

---

1. Ind.Code § 34–4–33–9 provides in pertinent part:

    In actions brought under [provisions of the Comparative Fault Act], whenever a jury returns verdicts in which the ultimate amounts awarded are inconsistent with its determinations of total damages and percentages of fault, the trial court shall:
    (1) inform the jury of such inconsistencies;
    (2) order them to resume deliberations to correct the inconsistencies; and

    (3) instruct them that they are at liberty to change any portion or portions of the verdicts to correct the inconsistencies.

    Although the trial court did not follow the precise mandate outlined by the statute, neither party raises the issue as error on appeal. Further the procedure used by the trial court effectively accomplished the statute's purpose.

mined that Archer was not liable. In so doing the jury acted within its authority to "change any portion of the verdicts" in order to correct the previous inconsistency. *See* I.C. § 34–4–33–9. Simply because the jury determined initially that Archer was 50% at fault and then determined that he was only 49% at fault does not necessarily mean that the second verdict was a compromise. Obviously the jury found that both Archer and Rose were at fault and in nearly the same degree. It is also revealing that with both verdict forms, the jury found in favor of Archer and against the Grotzingers. Ultimately the jury determined that Archer was not liable and accordingly awarded zero damages. Only where the fact finder determines that a party is liable and then awards zero damages or damages inconsistent with the evidence, can there be a determination that the jury verdict was likely the result of a compromise.

 The Grotzingers counter that the trial court properly rejected the jury's second verdict. In support of its argument the Grotzingers attempt to distinguish between "verdict" on the one hand and the "fault" allocation on the other hand. According to the Grotzingers after being instructed to deliberate a second time, "the jury did not change its verdict, but merely changed the fault allocation. It is important to note that the fault determination is not the verdict...." *Brief of Appellee* at 7. The Grotzingers cite no authority for this novel proposition, and our own research reveals none. Rather, the word "verdict" means the finding of the jury. *Heekin Can Co. v. Porter,* 221 Ind. 69, 46 N.E.2d 486 (1943). It has also been defined as the answer of the jury concerning any matter of fact in any case committed to it for trial. *Limeberry v. State,* 223 Ind. 622, 63 N.E.2d 697 (1945). In a comparative fault case the jury's verdict necessarily includes an allocation of fault, and an assessment of damages, if any. The Grotzingers cannot prevail on this point.

In sum we conclude that the jury's verdict did not represent a compromise. Therefore the trial court erred in rejecting the verdict and declaring a mistrial. The judgment of the trial court is reversed and this cause is remanded to the trial court with instructions to enter judgment in favor of Archer consistent with the jury's verdict.

Judgment reversed and cause remanded.

SHARPNACK, C.J., and ROBERTSON, J., concur.