**Julie R. CEDARS, by next friend Raymond D. CEDARS and Anna L. Cedars, Appellants–Plaintiffs,**

v.

**Cherish A. WALDON, Steven Waldon, Linda Waldon, Scott Kessler, and Toni Newgent, Appellees–Defendants.**

No. 54A01–9710–CV–355.

Court of Appeals of Indiana.

Feb. 23, 1999.

---

Gregory H. Miller, Wernle, Ristine & Ayers, Crawfordsville, Indiana, Attorney for Appellant.

Linda Y. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, Indiana, Attorney for Appellees Cherish A. Waldon, Steve and Linda Waldon.

John H. Douglas, Smith, Maley & Douglas, Indianapolis, Indiana, Attorney for Appellees Scott Kessler and Toni Newgent.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Julie Cedars and her parents, Raymond and Anna Cedars, appeal from a judgment entered against them in their tort actions against Cherish Waldon; her parents, Steve and Linda Waldon; Scott Kessler; and his mother, Toni Newgent. The judgment was entered upon two jury verdicts awarding Julie and her parents zero damages and $4,000, respectively. Linda Waldon cross-appeals the trial court's denial of her motion to dismiss.[1]

We affirm in part, reverse in part and remand for a new trial.

### ISSUES

The Cedars raise the following issues on appeal:[2]

I. Whether the trial court erred by entering judgment on the verdicts.

II. Whether the trial court properly instructed the jury regarding the standard of care to which the minor parties are held.

On cross-appeal, Linda Waldon raises the following issue:

Whether the trial court erred in overruling Linda Waldon's motion to dismiss.

### FACTS

On November 12, 1991, sixteen year-old Cherish Waldon, a licensed driver, agreed to drive Julie Cedars, Scott Kessler, Kelly Miller and Tim Grino to their respective homes from Southmont High School in a vehicle owned by her parents, Steve and Linda Waldon.

After driving Miller to her home in New Market, Cherish drove along County Road 600 South until she reached County Road 400 West where she stopped the car and permitted Scott, a fifteen year-old unlicensed driver, to drive the vehicle. Cherish did not inquire as to whether Scott was a licensed driver. Although Julie knew that Scott did not have a license, she did not express any objection to Cherish's decision to allow Scott to drive.

Scott drove the vehicle along County Road 600 South until he turned onto County Road 500 West. Scott proceeded straight along County Road 500 West, which was wet and covered with leaves, until he approached a series of curves. Cherish and Julie both requested that Scott slow down. Scott subsequently lost control of the vehicle while attempting to negotiate a curve, and it left the road and collided with a tree. As a result of the accident, Julie was knocked unconscious and sustained a mild concussion, a laceration on the left side of her eye, and other injuries requiring medical treatment.

On February 22, 1994, Julie and her parents, Raymond and Anna Cedars, filed an amended complaint for damages. In Count I, Julie alleged that Cherish was responsible for her injuries because she recklessly and

---

1. Two Appellees' Briefs were filed in this appeal. Scott and Toni Newgent filed a joint brief, and Steve, Linda and Cherish Waldon have filed a joint brief.

2. The Cedars also raise the issue of whether the jury's zero damages verdict in favor of Julie was inadequate and contrary to the weight of the evidence. Because we conclude that the trial court erred by entering judgment on the verdicts, we need not address this issue.

negligently entrusted the operation of an automobile to Scott. In Count II, Julie alleged that Steve and Linda Waldon were financially liable for any of her damages caused by Cherish pursuant to Ind.Code §§ 9–24–9–3, 9–24–9–4, and 34–4–31–1. In Count III, Julie claimed that Scott negligently and recklessly operated the vehicle resulting in her injury. In Count IV, Julie alleged that Scott's mother, Toni Newgent, was responsible for her injuries caused by her son, Scott, under Ind.Code §§ 9–24–9–3, 9–24–9–4, and 34–4–31–1. In Count V, Raymond and Anna Cedars sought damages for medical expenses and lost services from all defendants. The defendants denied the allegations of negligence and asserted the defenses of contributory negligence and assumption of risk.

At trial, Scott admitted his responsibility for the accident. (R. 769). When asked if he admitted that he did not drive the vehicle "carefully and reasonably," Scott acknowledged, "I don't believe I knew how to drive that car properly." (R. 770). Scott also testified that it was not Julie's fault that the wreck occurred and that "she should be compensated." (R. 777). Cherish admitted to her share of responsibility for the accident, stating that she should have not permitted Scott to drive. Cherish also stated that she should have, but failed to consider the safety of others when she permitted Scott to operate the vehicle. (R. 866). Nevertheless, Cherish stated that Julie was at fault, reasoning that "if it was such a big deal that [Scott] was driving she could have spoke up." (R. 817).

After deliberating, the jury returned to the courtroom having failed to complete a verdict form as to Julie. The trial court directed the jury to return to the jury room for further deliberation. The jury then returned the following verdict in favor of Julie:

> We, the jury find for plaintiff Julie Cedars and
>
> That her total damages are $ 0 , that the fault causing such damages attributable to defendant Cherish Waldon's negligence is 0 %, and that Julie Cedars should recover damages from Cherish Waldon in the amount of $ 0 ;

* * * * *

> That her total damages are $ 0 , that the fault causing such damages attributable to defendant Scott Kessler's negligence is 0 %, and that Julie Cedars should recover damages from Scott Kessler in the amount of $ 0 ;

* * * * *

(R. 373–74). The jury also returned the following verdict in favor of Julie's parents:

> We, the jury, find for plaintiffs Raymond Cedars and Anna Cedars and
>
> That their total damages are $4,000.00, that the fault causing such damages attributable to defendant Cherish Waldon's negligence is 40%, and that Raymond and Anna Cedars should recover damages from Cherish Waldon in the amount of $1,600;

* * * * *

> That their total damages are $4,000.00, that the fault causing such damages attributable to defendant Scott Kessler's negligence is 60 %, and that Raymond and Anna Cedars should recover damages from Scott Kessler in the amount of $2,400.00;

* * * * *

(R. 376). The jury crossed out all the portions of the verdict forms pertaining to Cherish and Scott's alleged recklessness.

Finding inconsistencies in the verdicts, the trial court directed the jury to retire to the jury room. The Cedars then made a motion for mistrial, which was denied. Following a brief discussion with counsel, the trial court polled the jurors to determine whether they had intended to reach the verdict they had rendered. Each juror responded in the affirmative, and the jury was released. Thereafter, the trial court interpreted the verdict for zero damages in favor of Julie as an improperly expressed verdict for Cherish and Scott and entered judgment in their favor. The trial court then entered judgment in favor of Cherish and Scott notwithstanding the jury's verdict in favor of Julie's parents, finding that the verdict was inconsistent with the court's instructions and contrary to law.

## DECISION

### I. Defective Verdicts

The Cedars contend that the trial court erred by entering judgment in favor of Cherish and Scott on the zero damages verdict in favor of Julie. Specifically, the Cedars argue that the verdict was too ambiguous and irreconcilably inconsistent on its face to pronounce a judgment thereon.

In response, Scott and Newgent acknowledge that the trial court was faced with a legally inconsistent verdict, but argue that such a defect did not render the verdict invalid because "the court reasonably presumed that the jury intended to deny the plaintiff Julie Cedars a recovery...." Br. of Scott and Newgent, p. 25. Thus, they assert that the verdict was not so defective or uncertain that no judgment could be pronounced on it. In a similar argument, the Waldons argue that the trial court corrected the verdict to reflect the jury's clear intention that Julie not recover.

 Although courts indulge every reasonable presumption in favor of the legality of a verdict, a verdict may be overturned if it is legally or logically inconsistent, contradictory or repugnant such that no judgment can be pronounced upon it. *Emerson v. Markle,* 539 N.E.2d 35, 39 (Ind.Ct.App.1989). Accordingly, a court should not enter judgment upon a verdict that is so ambiguous or contradictory that the jury's intentions in rendering it cannot be ascertained. *See Hemings v. Redford Lounge, Inc.,* 485 N.E.2d 1378, 1383 (Ind.Ct.App.1985)(new trial required in negligence action where jury returned confused and contradictory verdicts); *see also* 75B Am.Jur.2d Trial § 1817 at 573 (1992)("A verdict which is too uncertain or indefinite to be construed either as a general or special verdict may be rejected by the court as meaningless and of no effect.").

 Under the circumstances of this case, the defects and inconsistencies in the verdict go to the heart of the jury's findings on the issues of liability and damages, and we must engage in pure speculation to construe what verdict was actually rendered. On the one hand, and as the trial court found, the general verdict can be construed to mean that the jury determined that Cherish and Scott were not liable and, therefore, did not have to reach the issue of damages. However, if we accept this interpretation, the verdict form finding in favor of defendants and against plaintiffs should have been used.[3] Furthermore, this interpretation is weakened by the fact that the jury *did* reach the issue of damages, expressly finding that Julie's damages were zero. This interpretation is further weakened in light of the fact that the jury awarded Julie's parents $4,000 despite the trial court's clear instruction that if it "finds that the defendants are not at fault then your verdict should be for the defendants and no further deliberation is necessary." (R. 1328).

On the other hand, the zero damages verdict can also be construed to mean that the jury did exactly as it intended to do, namely, found that although Cherish and Scott were liable, Julie failed to prove any actual damages. *See Niemeyer v. Lee,* 144 Ind.App. 161, 245 N.E.2d 178, 180 (1969)(In discussing the consequences of a zero damages verdict, the Court stated that "the jury's verdict means that appellees-defendants were legally responsible for whatever damages proximately resulted from the accident, but that appellant sustained no damage, and, further, that the verdict was so understood by all concerned."). However, this interpretation is also weakened in light of the fact that the jury failed to assess any fault against Cherish and Scott on the verdict form. Moreover, if we were to adopt this interpretation, Julie should have been awarded damages as the uncontradicted and unimpeached evidence at trial reveals that she sustained a mild concussion, a laceration to her left eye, and injuries to her neck and trapezius muscles.

---

3. The trial court instructed the jury as follows:
 If you find that defendants were not at fault or if you find Julie Cedars fault was greater than 50% of the total fault which proximately caused her injury, then your verdict should be for the defendants and against plaintiffs. The form of your Verdict in favor of defendants and against plaintiffs shall be as follows: "We, the Jury, find for defendants and against plaintiffs."
 (R. 1330).

Consequently, the verdict is ambiguous because it is impossible to ascertain whether the jury found no liability, or whether it found liability but no damages. We also cannot infer from the verdict whether the jury was somehow confused about the proper measure of damages or whether it was confused about the proper rules for determining liability, or both.[4] Because this ambiguity is such that even speculation as to why the jury acted as it did is unrewarding, the only available course of action is to reverse and remand this case to the trial court for a new trial on the issues of both liability and damages.[5]

## II. *Jury Instruction—Standard of Care*

Because we are remanding this case for a new trial, it is necessary for us to address the Cedars' contention that the trial court erroneously instructed the jury regarding the proper standard of care of the parties. At the close of evidence, the trial court refused to give Cedars' Tendered Instruction No. 7, which stated:

> Indiana requires that a prospective driver be at least 16 years of age and meet certain qualifications before being licensed. The licensing qualifications are the same whether the applicant is 16 or 50. Scott Kessler was engaged in an activity requiring adult qualifications, and, therefore, must be held to the same standard of care as an adult.

(R. 346). Instead, the trial court gave Instruction No. 8, which stated as follows: "Children over the age fourteen (14) are held to the same standard of care as an adult." (R. 328).

On appeal, the Cedars contend that the trial court erred by giving Instruction No. 8.

Specifically, the Cedars contend that the effect of the trial court's instruction "is to hold Julie Cedars to the same standard of care as Scott Kessler, even though Julie was not engaging in adult-like behavior for which she should have been held to the standard of care of an adult." Br. of Cedars, at 19. We disagree.

■ An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict. *Kelley v. Watson*, 677 N.E.2d 1053, 1056 (Ind.Ct.App. 1997). In the present case, it is undisputed that all of the parties involved in the accident, including Julie, were over the age of fourteen. In Indiana, children over the age of fourteen, absent special circumstances, are chargeable with exercising the standard of care of an adult. *Creasy v. Rusk*, 696 N.E.2d 442, 444–45 (Ind.Ct.App.1998); *Bailey v. Martz*, 488 N.E.2d 716, 721 (Ind.Ct. App.1986). Thus, the trial court's instruction was a correct statement of the law, clearly applicable to the evidence, and relevant to the issue of negligence. Accordingly, the trial court did not err in giving Instruction No. 8.

■ The Cedars also claim the trial court erred in refusing its tendered instruction No. 7. A party is generally entitled to have a tendered instruction read to the jury if: 1) the instruction is a correct statement of the law; 2) it is supported by evidence adduced at trial; 3) it does not repeat material adequately covered in other instructions; and 4) the substantial rights of the tendering party would be prejudiced by failure to give it. *CSX Transp., Inc. v. Kirby*, 687 N.E.2d 611,

---

**4.** After noting the inconsistency with the verdict, the trial court had an opportunity to direct the jury to reconsider its confusing verdict in light of its explicit instructions and jury forms. It failed to do so. *See* 75B Am.Jur.2d Trial § 1789, at 551 (1992)("It is the duty of a trial judge not to receive an indefinite, imperfect, or ambiguous verdict, and to cause the jury to retire and put their verdict in proper form after proper instructions from the court."). The trial court's subsequent attempt to rationalize the jury's decision, although commendable, amounted merely to speculation.

**5.** The Waldons, Scott and Newgent contend that if a new trial is required, the issue of Cherish and Scott's recklessness has been consistently decided in their favor and should not be retried. Appellate Rule 15(N) provides, in pertinent part, that "if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair." Here, the Cedars have not challenged the jury's determination that Cherish and Scott did not act recklessly. Therefore, this issue need not be retried on remand.

617 (Ind.Ct.App.1997). Here, Instruction No. 8 adequately covered the substance of Tendered Instruction No. 7 by informing the jury that Scott was to be held to an adult standard of care. We find no error.

### Linda Waldon's Cross–Appeal

Linda Waldon had agreed to be jointly and severally responsible for the liability of Cherish under I.C. § 9–24–9–4, which reads:

> (a) An individual who signs an application for a permit or license under this chapter agrees to be responsible jointly and severally with the minor applicant for any injury or damage that the minor applicant causes *by reason of the operation of a motor vehicle* if the minor applicant is liable in damages.

On cross-appeal, Linda Waldon claims that she cannot be jointly and severally liable for Julie's injuries under I.C. § 9–24–9–4 because Julie's injuries were not caused by Cherish's operation of a motor vehicle. In essence, she argues that liability under the statute does not encompass a minor's negligent entrustment of an automobile to another person. We disagree.

A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. *Ind. Dept. of Natural Resources v. Town of Syracuse,* 686 N.E.2d 410, 412 (Ind. Ct.App.1997). In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *Id.* When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Id.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Here, the underlying goal of the statute "is to provide a source of financial responsibility where underage drivers are the cause of an accident." *Stocker v. Cataldi,* 483 N.E.2d 461, 463 (Ind.Ct.App. 1985) (discussing Ind.Code § 9–1–4–32, the predecessor to I.C. § 9–24–9–4). We agree with the Cedars that the statute manifests a broad purpose and does not apply solely to a minor who causes damages by personally operating a vehicle.

Here, Linda Waldon signed Cherish's application and voluntarily agreed to be jointly and severally liable for any damages for which Cherish was liable by reason of the operation of a motor vehicle. Cherish, with Linda Waldon's consent, possessed and controlled a vehicle on a public roadway and during that time, entrusted the vehicle to Kessler, an unlicensed driver. Under these circumstances, we find the Cedars' theory of negligent entrustment falls within the intended purpose of the statute. *See Smith v. Thomas,* 126 Ind.App. 59, 67, 130 N.E.2d 85, 89 (1955). Accordingly, the trial court properly found that Linda Waldon can be jointly and severally liable if the jury finds Cherish liable to the Cedars on the theory of negligent entrustment.

We affirm in part, reverse in part and remand for a new trial.

SULLIVAN, J., and RUCKER, J., concur.