Brian S. TINCHER, Appellant–
Plaintiff,

v.

Brian S. DAVIDSON, Appellee–
Defendant.

No. 49A05–9912–CV–534.

Court of Appeals of Indiana.

July 14, 2000.

Michael L. Hanley, Daniel J. Paul, Vernon J. Petri and Associates, Indianapolis, Indiana, Attorneys for Appellant.

Matthew J. Jankowski, Smith, Maley & Douglas, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Brian S. Tincher ("Tincher") appeals the trial court's declaration of a mistrial and denial of his motion for judgment on the evidence in his action against appellee-defendant Brian S. Davidson ("Davidson"). We affirm.

### Issues

We consolidate and restate the issues raised by the parties as follows:

I. whether the trial court abused its discretion in declaring a mistrial; and

II. whether the trial court properly denied Tincher's motion for judgment on the evidence under Indiana Trial Rule 50.

### Facts and Procedural History

On September 2, 1993, Davidson's car hit Tincher's car, which was stalled at a stoplight. Tincher sued Davidson on February 7, 1995, alleging bodily injury and other damages proximately caused by the collision.

The trial court conducted a jury trial from September 7 through 9, 1999. In his closing argument, Tincher's counsel suggested that the jury should award him $146,000, a figure reached by multiplying $10 as compensation for pain and suffering by the number of days remaining for his

1. The trial court took judicial notice of Tincher's life expectancy.

2. The following events occurred toward the close of this trial: while Judge Jester presided over the majority of the two-day trial, he took ill shortly before closing arguments, and Master Commissioner S.K. Reid was appointed to preside over the remainder of the trial. Commissioner Reid instructed the jury and answered the questions they submitted during their deliberation, but was required to leave the proceedings temporarily. Master Commissioner Ted Robinette was appointed to receive the first jury verdict in Commissioner Reid's absence; Commissioner Robi-

life expectancy from the day of the collision.[1]

When the jury retired to deliberate for the first time, the trial court provided the jury with a copy of the court's instructions for reference during deliberation. During its deliberations, the jury submitted several written questions.[2] The jurors first asked, "Can we see a copy of the Police Report? If not[,] was Mr. Tincher stopped at the signal?" The trial court responded in writing that it could not answer their questions and instructed jurors to rely on their "best recollection of the evidence presented" at trial. The jurors later asked, "What is the basis of $10/day?" and "Is there any other amount of damages to be considered in the total[,] i.e.[,] attorney fee, travel, medical, etc.?" The court provided the same response as above.

When the jury returned its verdict, the trial court read it aloud in open court verbatim from the forms used by the jury, as follows:

### VERDICT FORMS

### GENERAL COMPARATIVE FAULT VERDICT FORM

If you find the defendant is not at fault, you should proceed to Verdict Form "B" which should be signed and dated by the jury foreperson.

If you find that the defendant was at fault, you should attribute fault as follows:

nette returned the jury for reconsideration and further deliberations after receiving the first inconsistent verdict. Commissioner Reid returned during these deliberations, addressed the jury's questions, received the second inconsistent verdict, and ultimately discharged the jury and declared a mistrial. Judge Jester presided over the hearing on the motion to correct error. Notwithstanding the appearance of three different judicial officers during the proceedings, the guidance and instructions given to the jury by the two magistrates were entirely consistent with those provided by Judge Jester throughout the trial.

| Percentage of fault attributable to defendant, Brian D. Davidson | 100 % |
| Percentage of fault attributable to plaintiff, Brian S. Tincher | 0 % |
| | = 100 % |

If you find that plaintiff's fault, if any, was more than fifty percent (50%) of the total fault involved in the incident that proximately caused the plaintiff's injuries, you are to find that the defendant is not liable to the plaintiff. You should proceed to Verdict Form "B" which should be dated and signed by the jury foreperson.

However, if you find that plaintiff's fault, if any, was fifty percent (50%) or less than the total fault involved in the incident that proximately caused the plaintiff's injuries, and you found any percentage of fault was attributable to the defendant, you are to find such defendant liable to the plaintiff. You should calculate Plaintiff's Brian S. Tincher, damages as follows:

We the jury, find that the Plaintiff's, Brian S. Tincher, total damages (disregarding any contributory fault charged to Brian S. Tincher) are $ 1500 .

We, the jury, now calculate Plaintiff's Brian S. Tincher, recovery by multiplying Plaintiff's total damages by the percentage of fault charged to the Defendant.

| Total of Damages | $ | 1500 | |
| Fault Charged to Defendant | × | 100 | % |
| Plaintiff's recovery | $ | 150000 | |

## VERDICT

### VERDICT FORM "A"

We, the jury, find for the plaintiff, Brian S. Tincher, and against the defendant and assess the plaintiff's damages in the sum of One Hundred Fifty Thousand Dollars, ($150,000).

| 9/9/99 | [signature of Foreperson] |
| Date | Foreperson |

After polling the jurors, Davidson's counsel asked to see the verdict forms. The court conducted a sidebar conference, during which Davidson's counsel stated, "Your Honor, we find this to be an inconsistent verdict." The trial court temporarily dismissed the jury from the courtroom so that counsel and the court could discuss how to proceed given the flawed verdict. Once the jury was removed, the court stated,

Let the record show Counsel are present and having discussed the [sic] with the Judge what we have decided to do is to advise the Jury that their verdict is not consistent, give them [a] clean set of forms, go back and reconsider the forms and before we have the Jury present, I'd like each Counsel to state whatever objections if any they have. . . .

Tincher's counsel objected to the court's permitting the jury to reconsider its verdict, stating in part, "we'd stand on the verdict of $150,000. . . ." Davidson's counsel agreed with the court that the verdict was inconsistent and moved for a mistrial "so that both parties have the opportunity to try this to a Jury that's not having the confusing problems that this Jury is having. . . ." The trial court stated, "I'm confused as to what they wanted and intended, but so . . . I'm going to have them come back in, advise them of that, give them the forms again and ask them to reconsider . . . ." The bailiff returned the jurors to the courtroom, and the trial court instructed them as follows:

There was some inconsistency in the verdict forms and it's difficult to determine what the Jury intended. We're going to give you new verdict forms, ask that you go back[,] read the forms, and reconsider and that's what we're going to ask you to do. And so we will give you new verdict forms and ask you to go ahead and through the verdict forms, after re-reading them, decide what the verdict was, intended to be, and how it was arrived at. That's the only communication I can have with you.

During their continued deliberations, the jurors again submitted written questions,

asking, "In a previous attempt to clarify this form, we now need to understand the 'inconsistency' if in fact it relates to the intent of the form, calculation, methodology etc.?" "Is it appropriate to utilize plaintiff's $10/day to calculate damages? If so, is the 'fault charged' percentage applied to this figure?" and, "Can we have our previous Verdict Form?" The trial court declined to address the jury's questions and stated its intention to admonish the jurors to complete the verdict forms in accordance with the instructions they had previously received. In response, Tincher's counsel requested that the court enter judgment on the evidence, while Davidson's counsel renewed his motion for a mistrial.

When the jury returned its second verdict, "Verdict Form A" again indicated that the jury found Davidson 100% at fault. However, the "General Comparative Fault Verdict Form" read as follows:

> We the jury, find that the Plaintiff's, Brian S. Tincher, total damages (disregarding any contributory fault charged to Brian S. Tincher) are $ 75000 .
> We, the jury, now calculate Plaintiff's Brian S. Tincher, recovery by multiplying Plaintiff's total damages by the percentage of fault charged to the Defendant.

| Total of Damages | $ | 75,000 | |
|---|---|---|---|
| Fault Charged to Defendant | × | 100 | % |
| Plaintiff's recovery | $ | 150000 | |

The court read the verdict silently, then asked counsel to approach. The court noted that the jury had been deliberating for approximately six hours, yet its verdict remained inconsistent and confusing to the court. Tincher's counsel renewed his motion for judgment on the verdict notwithstanding the inconsistencies, and in the alternative, moved the court for judgment on the evidence pursuant to Indiana Trial Rule 50 regarding the jury's determination of fault. Davidson's counsel renewed his motion for a mistrial. The court then denied plaintiff's motions, granted Davidson's motion for mistrial, and excused the jury.

Tincher filed a motion to correct error, which the trial court denied.

**Discussion and Decision**

### I. Mistrial due to Defective Verdicts

Tincher first argues that the trial court impermissibly "treated the verdict forms as special verdicts or interrogatories and then impeached the general verdict with an inconsistent answer on those forms."

 Granting a mistrial lies within the sound discretion of the trial court, and we afford the trial court's decision great deference on appeal. *Archer v. Grotzinger,* 680 N.E.2d 886, 888 (Ind.Ct.App.1997). "Also, when it is apparent to the trial court that a jury cannot agree upon a verdict after ample time is spent in deliberation, there exists good cause for a jury's discharge." *Id.*

Indiana Code Section 34-51-2-13 governs inconsistent verdicts in the comparative fault context and provides as follows:

> In actions brought under this chapter ..., whenever a jury returns verdicts in which the ultimate amounts awarded are inconsistent with its determinations of total damages and percentages of fault, the trial court shall:
>
> (1) inform the jury of such inconsistencies;
>
> (2) order the jury to resume deliberations to correct the inconsistencies; and
>
> (3) instruct the jury that the jury is at liberty to change any portion or portions of the verdicts to correct the inconsistencies.

The foregoing statute describes the procedure the trial court followed in the instant case. However, Tincher argues that "while [Indiana Code Section ] 34-51-2-13 provides a mandatory procedure for attempting to cure defective verdicts, it may not be used as authority to reject a general verdict based on internal inconsistencies in the comparative verdict forms." In support of his argument, he cites *State,*

*Through Highway Dep't. v. Snyder*, 594 N.E.2d 783 (Ind.1992). In *Snyder*, a hitchhiker injured in a motor vehicle accident sued both the State and the driver who had given him a ride. A jury found the plaintiff more than fifty percent at fault in his action against the driver, but returned a verdict in his favor against the State, and awarded him $1,000,000 in damages. The State appealed, claiming the verdicts were inconsistent with one another. This court agreed and ordered a new trial on Snyder's claims against both defendants, but our supreme court vacated the decision and reinstated the trial court's judgment, reasoning:

> In essence, the State invites us to treat the verdict form returned in Snyder's claim against Parker as a special verdict or interrogatory to be compared to the general verdict returned by the jury in Snyder's claim against the State. We decline this invitation.
>
> Special verdicts and interrogatories were eliminated by Indiana Trial Rule 49. Thus, the verdict in Snyder's claim against Parker cannot be considered by us as a special verdict or interrogatory. We acknowledge. that the statutory scheme of the Comparative Fault Act requires that several verdict forms be given to the jury. We view this as an attempt by the legislature to prescribe a procedure by which the jury might be guided through the process of determining fault and assessing damages, and we do not intend to discourage the use of these forms in assisting the jury to properly determine fault and award damages in controversies tried under the Comparative Fault Act. However, we will not consider such verdict forms to be special verdicts or interrogatories. We hold that such forms as are prescribed by the Act will be treated as general verdicts and may not be used to impeach the general verdict returned here in favor of Snyder and against the State.

*Id.* at 786.

We disagree with Tincher that the trial court here violated the *Snyder* edict and impermissibly impeached the jury's general verdict by treating the verdict forms as special verdicts. First, this case differs from *Snyder* in having a single defendant and a single internally inconsistent verdict form, whereas in *Snyder*, one defendant urged the trial court to compare its verdict with that of another defendant. Second, it is clear from the record in the instant case that the trial court truly could not comprehend what the jury was trying to achieve by its calculations. Upon receipt of the second verdict, the trial court stated,

> The Court would note for the record that it has been presented the Jury's Verdict Form and the second form completed by the Jury assessing fault and determining damages but the end result of the calculation is still, it's confusing to the Court. The Jury has assessed 100% fault to the Defendant, the Jury did find damages of $75,000 but awarded the Plaintiff $150,000. I don't, I think the calculation, the calculation work, the numbers don't work on the form and this Jury has made two attempts in about three and a half hours to figure out how to calculate damages and they are not able to do so.

Rather than impeaching the general verdict, the trial court gave the jury an opportunity to replace a defective verdict with a logical, mathematically sound verdict; this effort resulted in a second verdict that made less mathematical sense than the first. "Although courts indulge every reasonable presumption in favor of the legality of a verdict, a verdict may be overturned if it is legally or logically inconsistent, contradictory or repugnant such that no judgment can be pronounced upon it." *Cedars ex rel. Cedars v. Waldon*, 706 N.E.2d 219, 223 (Ind.Ct.App. 1999). "Accordingly, a court should not enter judgment upon a verdict that is so

ambiguous or contradictory that the jury's intentions in rendering it cannot be ascertained."[3] *Id.*

Like *Snyder, Cedars* involved multiple defendants and multiple plaintiffs in a comparative fault action: one licensed, teenaged driver permitted her unlicensed teenaged friend to drive her and other passengers, one of whom was injured in the ensuing single-car accident. The injured passenger and her parents sued both the licensed and unlicensed drivers. On one hand, the jury found both drivers to be entirely without fault as to the passenger, and that her damages were $0. On the other hand, the jury found the plaintiff-parents had suffered total damages of $4,000, of which the licensed driver was liable for 40% and the unlicensed driver was liable for 60%. The trial court found that the verdicts contained inconsistencies, denied the plaintiffs' motion for a mistrial, polled and then discharged the jury, and ultimately entered judgment in favor of the defendants, notwithstanding the jury's verdict in favor of the plaintiff-parents. *Id.* at 222. On review, we held that "the defects and inconsistencies in the verdict" went "to the heart of the jury's findings on the issues of liability and damages," and that both the trial court and this court would be constrained to "engage in pure speculation to construe what verdict was actually rendered." *Id.* at 223.

Here, it is clear that the trial court believed that the jury's verdict was too ambiguous or contradictory for a judgment to be entered thereon. It also determined that good cause existed for the jury's discharge – namely, that the jury had deliberated for an ample amount of time and had returned increasingly confusing and inconsistent verdicts. Although Tincher advances a logically plausible argument that the "100%" figure entered on all verdict forms indicates the jury's intent to hold Davidson 100% liable, the verdict forms taken as a whole were so dramatically defective and inconsistent with the trial court's instructions that to enter judgment thereon would require us to speculate that the jury understood the concept of liability. We are in no better position than the trial court to engage in such speculation. Hence, we find no abuse of discretion in the trial court's refusal to enter a judgment on a verdict that it did not understand, nor in its decision to discharge the jury and declare a mistrial.

---

**3.** As regards the ability to make the proper computation, we note that the trial court provided Indiana pattern comparative fault instruction No. 6.03, which we find to be a particularly instructive guide to jurors. Omitting (as did the trial court) the optional language included in the pattern instruction for multi-party actions and derivative plaintiffs, the instruction reads in pertinent part as follows:

If you find the defendant was at fault, you must assess the fault on a percentage basis between the plaintiff and the defendant. The percentage of fault assessed to each party will allow you to decide whether the plaintiff is entitled to recover damages, and if so, the amount of damages.
You will therefore decide the comparative fault issues as follows:
– First, you must decide the percentage of fault, if any, for the plaintiff and the defendant in the proximate cause of the plaintiff's injuries and damages. These percentages must total 100%.

– Next, if you decide the plaintiff's fault is greater than 50%, then you must return your verdict for the defendant; and no further deliberation is required.
– However, if you find that the plaintiff's fault is 50% or less, then you must decide the total amount of damages the plaintiff is entitled to recover, if any, without regard to fault.
– Then, you must multiply the plaintiff's total damages by the defendant's percentage of fault and return your verdict for the primary plaintiff and against the defendant in the amount of the product of that multiplication.

Having given the jury this pattern instruction along with the verdict form, which *also* explains how to calculate damages, the trial court used every means at its disposal to adequately instruct the jury, which yet was unable to return a consistent verdict.

## II. Judgment on the Evidence/Appellate Rule 15(N)

Tincher also contends that because both verdicts indicated a finding of 100% liability against Davidson, the trial court erred in denying his motion for judgment on the evidence. He alternatively urges that even if we agree that a new trial is proper, we should limit such new trial to the issue of damages, pursuant to Indiana Appellate Rule 15(N).

Davidson responds that "the purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence," citing *Zemco Mfg., Inc. v. Pecoraro,* 703 N.E.2d 1064, 1071 (Ind.Ct.App.1998), *trans. denied.* He also cites the following from our decision in *Farm Bureau Ins. Co. v. Crabtree,* 467 N.E.2d 1220 (Ind.Ct.App. 1984):

> Judgment on the evidence is available only where the evidence is unconflicting and susceptible to but one inference, supporting judgment for the movant. When deciding whether to grant a motion for judgment on the evidence and when reviewing such a determination, the evidence is viewed in a light most favorable to the non-movant. If there is evidence on each element of the claim, the issue shall be tendered to the jury and the motion denied.

*Id.* at 1225 (citation omitted).

Ind. Trial Rule 50(A) provides in pertinent part as follows:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

The grant or denial of a motion for judgment on the evidence lies within the broad discretion of the trial court, and we will reverse it only for an abuse of that discretion. *Zemco,* 703 N.E.2d at 1071. For the same reason that we conclude the trial court properly exercised its discretion in declaring a mistrial – namely, because the jury's verdicts were defective and therefore the trial court could not enter a judgment thereon – we conclude that the trial court properly exercised its discretion in denying Tincher's motion for judgment on the evidence. As the trial court stated at the hearing on Tincher's motion to correct error:

> That comparative fault statu[t]e provides for those calculations to come up with the verdict forms. It's inherent in rendering a verdict on a comparative fault case that you go through those calculations. They become a part of the verdict in that sense, because a verdict cannot be rendered by a Jury without that calculation. So it's not like where you have special questions that are submitted to the Jury to answer that might be inconsistent with the judg[ ]ment, so to speak. And my question is how does the Court become that convinced that what they intended when they put one figure in one place and another figure in another place, when the obvious, the best determinator of what the verdict ought to be, is if a Jury renders a consistent verdict at a new trial.

We agree with the trial court that the inconsistencies in both verdicts cast doubt upon Tincher's assertion that judgment on the evidence is appropriate in this case. Viewed in the light most favorable to Davidson as the non-movant, the record is not clear that the evidence is unconflicting and susceptible to but one inference. The impossible task of determining the jury's intent as to damages supports this conclusion: an entry of "100%" on the verdict form is almost meaningless where it appears that the jury does not understand how to apply such a percentage in the comparative fault scheme.

Similarly, it would be inappropriate for us to exercise our discretion pursuant

to Indiana Appellate Rule 15(N) to order a new trial limited to the issue of damages. The pertinent portion of the rule provides, "if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be unpracticable or unfair." We have held that "[a] limited new trial is proper only when the evidence of liability is so clear that there is no issue on that point for a second jury to retry." *State v. Tabler,* 178 Ind.App. 31, 381 N.E.2d 502, 505 (1978). Although *Tabler* addressed the propriety of a bifurcated retrial in the context of impermissibly compromised jury verdicts, as opposed to the facts presented by the instant case, it nonetheless appears to us to be both unpracticable and unfair to limit a new trial in this matter to the issue of damages. As the trial court noted, in a comparative fault situation such as here, the calculations this jury was incapable of reconciling are inextricable from the verdict it was required to render. We have affirmed the refusal of a limited new trial in a situation such as this, where the issue of liability was "not clear." *See Smith v. Syd's, Inc.,* 570 N.E.2d 126, 129 (Ind.Ct. App.1991). Tincher has not persuaded us to depart from this precedent.

Affirmed.

DARDEN, J., and MATTINGLY, J. concur.