**Elizabeth CORTNER, Appellant–
Defendant,**

v.

**John and Martha LOUK,
Appellees–Plaintiffs.**

No. 29A05–0212–CV–592.

Court of Appeals of Indiana.

Oct. 16, 2003.

Richard A. Rocap, Jeffrey B. Fecht, Rocap Witchger, LLP, Indianapolis, IN, Attorneys for Appellant.

Paul S. Kruse, Parr Richey Obremskey & Morton, Lebanon, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Elizabeth Cortner appeals the trial court's grant of a mistrial after the jury returned a verdict in her favor in a personal injury lawsuit brought by John and Martha Louk. We reverse and remand.

### Issue

The sole restated issue is whether the trial court abused its discretion in granting a mistrial based upon questions posed by the jury while it was deliberating and statements jurors made after the verdict was returned.

### Facts

On April 10, 1999, John Louk was riding his motorcycle in Carmel on Gray Road, which is a two-lane road. Immediately in front of him was a vehicle driven by Deborah Stovall, and in front of her was Cortner. As all three vehicles approached an intersection that led to a gravel pit, Louk began to pass Stovall's and Cornter's vehicles on the left. There was a discrepancy in the testimony whether Cortner signaled a right turn, or a left turn. In any event, after signaling either left or right, Cortner began to turn left onto the gravel pit road. Louk struck Cortner's vehicle as she was turning and was thrown from the motorcycle. It is undisputed that Louk was injured as a result of the accident.

The Louks sued Cortner, and a jury trial was held on November 12–14, 2002. During deliberations, the jury sent several questions to the trial court. Its first note read, "If we find the defendant more at fault than the plaintiff and we find the damages to be one penny will you can you throw out the award/verdict?" Appellant's App. p. 19. The trial court responded, "You have all of the law and all of the facts you are permitted to consider in arriving at your verdict." *Id.* at 20. The jury later sent another note that read, "If we assign fault to the defendant and assign damages of zero $0.00 dollars by rule of law can the award be changed, modified or overridden by anyone." *Id.* at 21. The trial court again responded, "You have all of the law and all of the facts you are permitted to consider in arriving at your verdict." *Id.* at 22. The Louks moved for a mistrial after these notes were received; the trial court took the motions under advisement.[1]

The jury eventually returned a verdict in favor of Cortner. The Louks renewed their mistrial motion and the trial court granted it, stating: "My reason is it is abundantly clear that something inappropriate happened, as far as I can tell, happened in the jury room based upon the questions from the jury. Don't think we should be having compromised verdicts of this nature." *Id.* at 16. Later, after speaking to the jurors to thank them for their service and after the mistrial had been ordered, the trial court entered an "Amended Order Declaring Mistrial," which related the trial judge's conversation with the jurors: "While [the jurors] felt the defendant was more responsible, they believed the plaintiff's expenses had been covered by his insurance." *Id.* at 9. No evidence that the Louks' damages had been paid by insurance had been introduced at trial and Cortner had not sought to avoid liability on this basis; the only

---

1. The jury asked two other questions that are not relevant to this appeal.

mention of insurance during trial was by a police officer who, in passing, implied that John Louk filed an insurance claim. Additionally, "One juror felt the Plaintiff was at fault because he had passed the defendant in an intersection which is not permitted by law." *Id.* The trial court concluded, "this additional information provides an additional basis why a mistrial is appropriate," and "it reinforces the Court['s] original determination that the first two questions from the jury indicated that they were considering matters outside the evidence and instructions." *Id.* at 10. Cortner now appeals.

### Analysis

■■■ "Declaration of a mistrial is generally within the discretion of the trial court." *Tincher v. Davidson,* 762 N.E.2d 1221, 1226 (Ind.2002). A trial court abuses its discretion if its action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Foman v. Moss,* 681 N.E.2d 1113, 1119 (Ind.Ct.App. 1997). An abuse of discretion also occurs if a decision is without reason or is based upon impermissible reasons or considerations. *Id.* "The Law indulges every reasonable presumption in favor of the legality of jury verdicts, and corrective action should only be taken when the verdict or verdicts are 'inconsistent because [of] a logical or legal impossibility.'" *Tincher,* 762 N.E.2d at 1226 (quoting *Indianapolis Newspapers, Inc. v. Fields,* 254 Ind. 219, 258, 259 N.E.2d 651, 668 (1970)). A mistrial is an extreme remedy to be used only when no other measure can rectify the perilous situation. *Id.*

■■■ We agree that if the jury in this case had returned a verdict that corresponded with the two notes it sent during deliberations, i.e. a verdict finding Cortner liable but awarding zero or nominal damages to the Louks, that would have been

an impermissible compromise verdict warranting a mistrial. A compromise verdict is one in which a jury, "although determining that the defendant is liable, nonetheless awards either zero damages or damages which are inconsistent with the facts introduced at trial." *Archer v. Grotzinger,* 680 N.E.2d 886, 888 (Ind.Ct.App.1997). There is no question that John Louk was seriously injured as a result of the accident and would have been entitled to more than a nominal amount of damages if Cortner was determined to be fifty or more percent at fault for the accident, in accordance with the comparative fault statutes.

This jury, however, did not actually return a compromise verdict, but instead returned one finding in favor of Cortner on the liability issue. We believe this case is for all relevant purposes indistinguishable from *Archer.* In *Archer,* the jury originally returned a verdict finding both the plaintiff and the defendant fifty percent at fault for an accident but awarding no damages to the plaintiff, instead of multiplying the total amount of damages by fifty percent as would have been required by the comparative fault statutes. The trial court advised the jury that its verdict was unacceptable, repeated the final instructions, and sent the jury back to deliberate further. The jury then returned with a verdict finding the plaintiff fifty-one percent at fault and the defendant forty-nine percent at fault, thus precluding recovery to the plaintiff under the comparative fault statutes. The trial court declared a mistrial, believing the verdict was a compromise verdict.

■■■ We reversed, ultimately concluding: "Only where the fact finder determines that a party is liable and then awards zero damages or damages inconsistent with the evidence, can there be a determination that the jury verdict was likely the result of a compromise." *Id.* at

889. Regardless of what preceded the jury's final verdict in this case, this verdict itself did not represent a compromise verdict and there were no grounds for declaring a mistrial.

■ We also hold it was legally impermissible, and thus an abuse of discretion, to rely upon notes sent by the jury during its deliberations to cast doubt upon the validity of its final verdict.[2] "It has long been established in Indiana that a jury's verdict may not be impeached by the testimony of the jurors who returned it." *Ward v. St. Mary Medical Center of Gary*, 658 N.E.2d 893, 894 (Ind.1995). This principle has been reaffirmed many times. *See, e.g., id.* (collecting cases). The most frequently cited policy reasons for this rule that "(1) there would be no reasonable end to litigation, (2) jurors would be harassed by both sides of litigation, and (3) an unsettled state of affairs would result." *Id.*

The *Ward* court considered a case in which the jury requested and was given permission to deliver an explanatory statement along with its verdict in a medical malpractice case, and which statement plainly said that the jury had not found the defendants to be negligent but had returned a $226,795 verdict in favor of the plaintiff anyway. The trial court declared a mistrial, and this court affirmed. *Ward v. St. Mary Medical Center of Gary*, 645 N.E.2d 1130 (Ind.Ct.App.1995). Our supreme court granted transfer, however, and held that it would not create an exception to the general rule against jurors impeaching their own verdict in such a situation and vacated the trial court's mistrial order. First, it held "that the voluntariness of a juror's impeaching statement in no way undermines the verdict" and that

an exception based on the voluntariness of a statement "would perpetuate unending litigation...." *Ward*, 658 N.E.2d at 895. Second, it held that the fact the jury was still impaneled when it made its impeaching statement was not "significant enough to warrant granting an exception." *Id.* Finally, it concluded "the inviolate right to a jury trial provided by section 20 of the Indiana Bill of Rights is eroded if a trial court judge can employ a jury's explanatory statement to vacate its verdict." *Id.*

The Louks attempt to rely upon the jury's questions in the middle of its deliberative process, indicating the possibility that it was considering returning a compromise verdict, to transform what was not a compromise verdict into one. Although this case is not precisely on all fours with *Ward*, we believe that sanctioning the use of the jury's questions in such a manner runs afoul of that case's principles and Indiana law. In this case, as in *Ward*, using the jury's deliberation questions and statements to vacate a facially valid verdict that conforms with the evidence[3] arguably erodes "the inviolate right to a jury trial provided by section 20 of the Indiana Bill of Rights." *Ward*, 658 N.E.2d at 895. It is also of no moment, under *Ward*, that the questions/statements were made by the jury voluntarily and while it was still impaneled. We see no indication, particularly given the definitive language of the *Ward* opinion, that our supreme court would grant an exception to the general rule prohibiting the use of jury statements to impeach verdicts in cases such as this. In fact, *Ward* arguably was a stronger case for creating an exception to the no-impeachment rule, in that the jury there expressly stated that it had not followed

---

2. The Louks ask us not to consider the jurors' post-verdict comments.

3. The Louks admit in their brief, "there is evidence in the record that could support a verdict in favor of either the Louks or Cortner." Appellee's Br. p. 15.

the law in reaching a verdict, whereas the jury questions in this case were posed before it had completed deliberations. To consider a jury's legal questions to the trial court during deliberations as evidence that the final verdict is suspect is interpreting the thought process of the jury in arriving at that verdict, which Indiana law prohibits. *See Tincher,* 762 N.E.2d at 1224 (noting that our supreme court has repeatedly stated, "we will not attempt to interpret the thought process of the jury in arriving at its verdict.") (quoting *Mitchell v. State,* 726 N.E.2d 1228, 1239 (Ind. 2000)).

*Tincher,* in particular, held that it was improper to impeach a jury's verdict by calculation forms accompanying the verdict, required by the comparative fault statute, that were themselves internally inconsistent or illogical. *Id.* at 1226. This was because "[t]he verdict itself was not internally inconsistent, illogical, or impossible." *Id.* The same is true here: the verdict returned by the jury was not internally inconsistent, illogical, or impossible, and it cannot be impeached by speculation about what the jury was thinking when it sent questions to the trial court during deliberations.[4]

The Louks also argue that upon receiving the questionable notes from the jury, the trial court was required to "poll the jury regarding any improper influence." Appellee's Br. p. 9. For support, the Louks cite *Lindsey v. State,* 260 Ind. 351, 295 N.E.2d 819 (1973). That case established that "whenever prejudicial publicity is brought to the attention of the court, at a minimum it must, at that time, interrogate

the jury to determine its exposure, and that jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom." *Id.* at 358, 295 N.E.2d at 823. This court subsequently stated that the *Lindsey* procedure should be utilized when there is "an adventitious, potentially influential event." *Threats v. State,* 582 N.E.2d 396, 400 (Ind. Ct.App.1991), *trans. denied* (1992). The "event" in *Threats* was the removal of a fellow juror.

The Louks cite no case, and our research has revealed none, that requires a jury to be polled whenever it asks a question that reflects a potential misunderstanding of or confusion over the law. We have found only one Indiana appellate decision whose facts approach the fact pattern in this case, and it came to the opposite conclusion. In *Anderson v. Taylor,* 154 Ind.App. 217, 289 N.E.2d 781 (1972), a deliberating jury requested access to a dictionary. The trial court denied this request without explanation. On appeal, we rejected the plaintiffs' argument that after receiving the request for a dictionary, the trial court was required to call the jurors into open court, question them as to why they wanted a dictionary, and then to give further clarifying instructions to correct any misunderstandings they might have had. *Id.* at 223–25, 289 N.E.2d at 786–87.

Similarly, in this case the jury's potential confusion over a point of law did not require a polling of the jury because there is no claim or evidence here that an "adventitious, potentially influential event"

4. The Louks cite us to a federal case that utilizes a multi-factor "totality of the circumstances" test for evaluating whether a compromise verdict was entered, thus requiring a new trial to be held. *See Yarbrough v. Sturm, Ruger & Co.,* 964 F.2d 376, 379 (5th Cir. 1992). Such a multi-factor test is inconsis-

tent with the straightforward test in Indiana for what constitutes a compromise verdict and with the principle that we will not attempt to interpret a jury's thought process in arriving at a verdict. We decline to adopt the Fifth Circuit's test.

prompted its questions.[5] Juror questions are frequently going to reflect confusion over what the law is; that is often the very reason questions are asked. At the time of this trial, the accepted response to a jury's question of law was to either reread all the instructions to the jury or to advise the jury that it could not receive further instruction, unless there was an error or gap in the instructions already given. *See, e.g., Thomas v. State,* 774 N.E.2d 33, 36 (Ind.2002) (stating that our supreme court historically "took the position that once jury deliberations commence, the trial court should not give any additional instructions."); *Riley v. State,* 711 N.E.2d 489, 493 (Ind.1999) (addressing exception for errors or gaps in final instructions). That is the action the trial court took in this case by informing the jury that it had received all of the facts and law it could receive. There is no claim here that the instructions actually given to the jury were erroneous or contained a gap. Thus, the trial court's responses to the jury's questions were entirely proper and there was no need to go further.[6]

 We acknowledge this case arguably requires us to play a game of "See no evil, hear no evil, speak no evil." The

possibility that the jury's verdict represented a compromise, based upon inferences from its questions during deliberations, seems to have been confirmed by certain jurors' post-trial statements that they believed Cortner was liable for the accident but did not want to award damages to the Louks because they improperly assumed that their damages would have been paid for by an insurance company. We are, however, compelled to review only what the trial court knew when it first ordered a mistrial and not to later juror statements, which the Louks concede should not have been considered by the trial court. They ask this court to disregard the trial court's amended mistrial order that reflects the judge's conversation with the jurors and they make no argument that it contains juror "testimony" allowed by Indiana Evidence Rule 606(b): statements regarding drug or alcohol use by any juror, extraneous prejudicial information improperly brought to the jury's attention, or any outside influence improperly brought to bear upon any juror. We recognize and sympathize with the trial court's concerns. The judge, correctly, as it turned out, smelled an improper evidentiary rat. However, we think the law on

---

5. The Louks make no argument that the jury actually received extraneous information in this case regarding insurance payments or any other such evidence.

6. Our supreme court recently changed the rules in this regard, "allowing trial courts to 'facilitate and assist jurors in the deliberative process ... in order to avoid mistrials.'" *Thomas,* 774 N.E.2d at 36 (quoting *Tincher,* 762 N.E.2d at 1224 (in turn citing Indiana Jury Rule 28)).

 Under appropriate circumstances, and with advance consultation with the parties and an opportunity to voice objections, a trial court may, for example, directly seek further information or clarification from the jury regarding its concerns, may directly answer the jury's question (either with or

without directing the jury to reread the other instructions), may allow counsel to briefly address the jury's question in short supplemental arguments to the jury, or may employ other approaches or a combination thereof.

*Tincher,* 762 N.E.2d at 1224. This language would seem to have given the trial court in this case more leeway to directly respond to the jury's questions if it had so chosen. Jury Rule 28, however, did not become effective until January 1, 2003, after this case was tried. We acknowledge that our supreme court, by adoption of Jury Rule 28, is signaling that trial courts have the authority to act more aggressively in these situations, but the chronology here constrains us to address this question in this manner.

this point is clear. The jury's facially valid verdict could not be impeached by questions asked before it was entered or statements made thereafter by the jurors. We conclude the trial court abused its discretion in granting the Louks' mistrial motion because it was based upon impermissible considerations.

### Conclusion

The verdict returned by the jury in this case was not a compromise verdict and the trial court erred in declaring a mistrial based upon questions asked by the jury before the verdict was entered and statements made thereafter. We reverse the grant of the Louks' mistrial motion and remand with instructions to enter judgment on the jury's verdict in favor of Cortner.

Reversed and remanded.

DARDEN and MAY, JJ., concur.